**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AARON E. MINOR,                    )
                                   )
                    Plaintiff,     )     2:22-cv-0304
                                   )
          vs.                      )     Magistrate Judge Dodge
                                   )
DENIS McDONOUGH, Secretary of the  )
Department of Veterans' Affairs,   )
                                   )
                    Defendant.     )
                                   )

**<u>MEMORANDUM OPINION</u>**

Plaintiff Aaron E. Minor ("Minor") alleges that he was denied a promotion to Lead Police Officer with the Butler Veterans Affairs ("VA") Police Department based on his race and in retaliation for a prior lawsuit he filed against the VA, and that this conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII). He names as the Defendant Denis McDonough, Secretary of the Department of Veterans Affairs ("the VA").

Presently pending is Defendant's motion for summary judgment (ECF No. 29). For the reasons that follow, the motion will be granted.[1]

## I.    Brief Procedural History

Minor commenced this action on February 17, 2022. In Count I, he alleges that the VA's decision not to promote him represents racial discrimination in violation of Title VII. Count II asserts a claim of retaliation based on the same facts.

Following the completion of discovery, the VA moved for summary judgment (ECF No. 29), and its motion has been fully briefed (ECF Nos. 30, 35, 40).

---

[1] The parties have consented to full jurisdiction by a magistrate judge (ECF Nos. 12, 13).

## II.     Relevant Factual Background

### A.  Brief Summary of Minor's Background

Minor enlisted in the National Guard in 1986. He remained in the military in at least a reserve status until his retirement with an honorable discharge in September 2014. Minor is a decorated combat veteran, having served two years in Iraq. During his military career, Minor served in three different branches of the Armed Forces: the Army, Marines and Air Force. At some point during his service, he was a military police officer. (Plaintiff's Statement of Additional Material Facts ("PSAMF") ¶¶ 1-2) (ECF No. 37.)[2]

While in the military, Minor completed Airman Leadership School, the Marines corporal leadership course and Primary Leadership Development School. All of these courses are designed to prepare the trainee for supervisory roles. For approximately ten to fifteen years of his military career, Minor was a noncommissioned officer (NCO)/sergeant. He also served as an Enlisted Accessions Recruiter. (PSAMF ¶¶ 3-5.)

Minor has an associate degree in Corrections Administration and has earned credits toward a bachelor's degree in Criminal Justice. (*Id.* ¶ 9.)

### B.  Minor is Hired at the Butler VA

In or around January or February 2015, Minor stopped by the police department at the Butler VA Medical Center and asked if the department was hiring police officers. Police Chief Thomas Bennett told him that there were no positions currently open, but that if Minor provided his contact information, Chief Bennett would get in touch when a position became available.

When an open police officer position became available in March 2015, Chief Bennett

---

[2] The VA notes that neither of Minor's two résumés mentions military service prior to 2000 and that he became a military police officer in approximately 2000. (Defendant's Response to Plaintiff's Statement of Additional Material Facts ("DRPSAMF") ¶ 2) (ECF No. 39.)

notified Minor and encouraged him to apply for it. Minor then applied for the open police officer

position. Chief Bennett and then-Lieutenant (now Deputy Chief) Charleton Namachar interviewed

him and thought Minor did an excellent job during the interview. (Defendant's Statement of

Undisputed Facts ("DSUF" ¶¶ 2-5) (ECF No. 31.)[3]

Minor was offered and accepted the police officer position. He began his employment with

the Butler VA in April 2015 at a GS-Level 5. On April 3, 2016, he was promoted from a GS-Level

5 to a GS-Level 6. (*Id.* ¶¶ 8-9.)

When he was first employed as a police officer at the Butler VA, Minor performed time

keeping and scheduling duties for the department. He also did most of the initial training for new

officers coming into the department. (PSAMF ¶¶ 7-8.) In or about February 2021, Deputy Chief

Namachar asked Minor to be a union representative. According to Minor, Deputy Chief Namachar

told him that the VA wanted him to be a union representative because people look up to and respect

him and he was very knowledgeable. Minor accepted the union role. (*Id.* ¶¶ 41-43.) Minor was

also the first police officer to be named employee of the month at the Butler VA. (*Id.* ¶ 11.)

C.   Minor Applies for a Transfer and Several Promotions

In the summer of 2016, Minor applied for a transfer to the Pittsburgh VA Medical Center

to fill a GS-Level 7 vacancy at that office. Chief Bennett encouraged him to apply this position

and provided a positive reference to the Human Resources (HR) Department on his behalf. Deputy

Chief Namachar also tried to help Minor with the transfer and supported him in that effort. The

Pittsburgh VA Medical Center did not accept Minor for transfer, however. (DSUF ¶¶ 10-13.)

In December 2016, Minor applied for a Lead Police Officer, GS-Level 7, position at the

Butler VA. In January 2017, a panel of interviewers interviewed Minor and other candidates. These

---

[3] Minor has admitted most of these facts.

interviews were performance-based in which the candidates were rated based upon their responses to hypothetical situations. (DSUF ¶¶ 15-18.)[4] Officer Brandon Lightner was ultimately selected for the position because he received the highest number of points during his interview. On May 3, 2017, Minor filed a formal complaint with the VA's Equal Employment Office (EEO) alleging unlawful discrimination with respect to the denial of the promotion. (*Id.* ¶ 21.)[5]

In September 2018, there was another vacant position posted for a Lead Police Officer at the Butler VA. Minor applied for this position but later withdrew his name from consideration. (*Id.* ¶ 22.)

### D. Minor's Prior Lawsuit

On December 19, 2017, Minor filed a lawsuit in this Court docketed as *Minor v. Shulkin*, No. 2:17-cv-01638. His claims included racial discrimination in violation of Title VII with respect to the Pittsburgh VA's rejection of his transfer request, racial discrimination and retaliation by the Butler VA when it did not select him for the Lead Police Officer position in January 2017, and racial discrimination and retaliation on the part of the Butler VA by not promoting him to an open Lieutenant (Supervisory Police Officer) in April 2018. (DSUF ¶¶ 14, 23.)

The VA subsequently filed a motion for summary judgment that was granted in part and denied in part in June 2020. The motion was denied with respect to Minor's claim relating to the Pittsburgh VA's rejection of his requested transfer. It was granted as to all other claims.[6]

The parties later advised the Court that they had reached a settlement and the lawsuit was dismissed in March 2021. (*Id.* ¶¶ 24-25.)

---

[4] The parties dispute the facts about Minor's conduct during the interview. However, as this was the subject of Minor's prior lawsuit which ended in a settlement, these facts are not relevant here.

[5] Prior to this lawsuit and the events at issue here, Minor also filed EEO Complaints on November 2, 2016, July 9, 2018, and December 2, 2019. (*Id.* ¶ 26.)

[6] In response to the motion for summary judgment, Minor indicated that he was no longer pursuing his claim related to the failure to promote him in April 2018.

E.   The 2021 Lead Officer Position Selection Process

Deputy Chief Namachar has served as second-in-command at the Butler VA since July 2019. In January 2021, Deputy Chief Namachar requested and received approval from the HR office to fill a vacant Lead Police Officer position at the GS-Level 7 at the Butler VA. The Butler VA then posted the announcement for the Lead Police Officer position. The application period for the position was March 1 to March 19, 2021. (DSUF ¶¶ 30, 32.) Namachar and not Chief Bennett was in charge of hiring for this position. (DSUF ¶¶ 28-30; Plaintiff's Response to Defendant's Concise Statement of Material Facts ("PRDCSMF") ¶ 29.) (ECF No. 36.)

Chief Bennett met with Minor periodically because he was the department's representative in the National Association of Government Employees (NAGE) union. In one of their conversations, Minor mentioned that he was applying for the posted position. According to Minor, Chief Bennett responded: "you should, it's yours" and Minor then told Chief Bennett that he would drop a pending EEO Complaint that he had filed. (DSUF ¶¶ 33, 93; PSAMF ¶ 40.) Chief Bennett denies promising Minor that he would be selected for the Lead Police Officer position. (DRPSAMF ¶ 40.) Rather, Chief Bennett told Minor he should apply for the position, just as he had advised Minor when he originally applied for a police officer position with the VA, and as he would advise any police officer. (DSUF ¶ 33.) According to Minor, this is the only conversation he had with Chief Bennett in which the subject of his EEO filings or the previous lawsuit came up, and it was Minor who raised the subject. Chief Bennett said nothing that later suggested to Minor that the reason for not selected him for the Lead Police Officer position was retaliation for his prior lawsuit or EEO filings. (DSUF ¶¶ 93-94.)

Minor applied for the Lead Police Officer position along with twelve other applicants. Although Minor knew that others were likely to apply, he believed he would be offered the job

because of his view that he was the best candidate for the position. (*Id.* ¶ 93.)

The Butler VA HR office reviews all applications and determines which applicants meet minimum eligibility requirements. In connection with the Lead Police Officer position, the HR office determined that Minor and seven other candidates met minimum eligibility requirements. (DSUF ¶ 34.) Seven of the eight eligible candidates were interviewed. (*Id.* ¶ 50.)

 Butler Medical Center Police Services typically conducted interviews by a panel of three supervisory police officers. Deputy Chief Namachar put Major Kevin Connor, the Operations Officer and third-in-command since 2021, in charge of the interview process for the Lead Police Officer vacancy. (*Id.* ¶¶ 31, 35.) Minor did not have any relationship with Major Connor. Because Major Connor was on the day shift and Minor the night shift, the only time Minor would see Connor was if he was working overtime or doing shooting qualification. (*Id.* ¶¶ 70-72.)

Deputy Chief Namachar told Major Connor that the panel should include two other panelists of a significant grade level higher than the position being interviewed and that participants should have experience with interviewing. Major Connor selected as the other two panelists Captain Melvin Garcia, a supervisory police officer at the VA Police for the Veterans Health Care System of the Ozarks in Fayetteville, Arkansas, who had worked with Connor in Wichita, Kansas; and Major Sean Southard, the Operations Major at the VA in Oklahoma City, Oklahoma, who did not know Connor. (*Id.* ¶¶ 36, 39-41.)

Chief Bennett, Deputy Chief Namachar and Major Connor all agreed that as had been done previously, the most important hiring factor would be the candidates' scores during the performance-based interviews. (*Id.* ¶¶ 37, 39.) Every selected candidate was given the same opportunity to participate in a performance-based interview with a panel of supervisors. According to the VA, no candidate was considered more or less qualified than another and all were given

equal consideration. (*Id.* ¶¶ 38-39.)

Neither Captain Garcia nor Major Southard knew any of the applicants. Major Connor did not tell Captain Garcia or Major Southard how to score each applicant nor did he communicate anything about the race of any of the candidates or indicate a preference for one candidate over another. Further he did not provide an information about whether any candidate, including Minor, had ever filed a discrimination complaint or lawsuit. (*Id.* ¶ 42.)

The interviews for the Lead Police Officer position were conducted on April 5 and 6, 2021. Major Connor was in the same room as the applicants and Major Southard and Captain Garcia participated remotely by video. Each applicant was allotted a 30-minute interview. (DSUF ¶ 43.) The interview consisted of seven questions as well a scenario to which applicants were to respond, and panelists took turns asking questions. (PSAMF ¶¶ 15-22.) The panel evaluated the candidates based on their knowledge of outside law enforcement and VA police policy, as well as their basic knowledge as a VA police officer. (DSUF ¶ 44.) Minor felt rushed during the interview, but all of the applicants he talked to mentioned feeling rushed. (DSUF ¶ 51.)

Each panelist gave each interviewee a score from zero to five on each question. Captain Garcia and Major Southard recorded the scores on the interview question sheet and then submitted their score sheets to Major Connor. Major Connor also recorded his scores for each applicant on an interview question sheet. (DSUF ¶ 45.)

Minor received scores of zero from all three panelists on Question 4, which asked about VA Form 237, a Voluntary Waiver of Rights Statement. As multiple panelists indicated, Minor didn't know what the form was. Captain Garcia noted that Minor didn't remember anything about the form, and Garcia deemed it a failure when an officer of many years couldn't answer a question about a form designed to protect someone's rights. Major Southard noted that Minor answered, "I

cannot remember that form." Major Connor noted that Minor "didn't know" the answer. Several other applicants received scores of zero on Question 4 as well. (DSUF ¶ 46.) According to Minor, he knew the form by name, not by number, as it is referred to by name in police reports. (PRDCSMF ¶ 46.)

The panelists' perception of Minor's answers to other questions varied. On Question 3, Major Connor noted that Minor's answer for Question 3 "didn't match the question," and he and Major Southard gave him low scores for this question. All of the panelists gave Minor four out of five points on Question 5, and Major Connor noted he gave a "good answer" to the question. Captain Garcia noted that Minor "did not answer [the] last part" of Question 7, but all three panelists scored him three out of five points. (DSUF ¶ 47.)

Question 6 asked the interviewees to give themselves a numerical rating between zero and ten on their report writing, leadership, dependability, and integrity. Minor ranked himself as a "10" on each of the four criteria. (*Id.* ¶ 48.)

Captain Garcia felt that while Minor relied on his outside experience, it appeared that he didn't know VA policy and procedure. When Minor failed to identify steps to take in the scenario question, Captain Garcia thought this was unexpected for an officer with his seniority. Captain Garcia gave candidates lower scores when they did not answer all parts of the question and noted that Minor didn't answer all parts of several questions. (*Id.* ¶ 54.)

Of the seven candidates the Butler VA interviewed, Minor received the sixth-highest total score and the sixth-highest average score. He received the sixth-highest score from Major Connor, was tied for the fifth-highest score from Major Southard, and the third-highest score from Captain Garcia. (*Id.* ¶ 50.)

F.   Officer Bartlett is Selected for the Promotion[7]

Officer Bartlett had both the highest average score and highest total score. She received the highest score from two of the panelists and the second highest score from the third panelist. All three panelists gave Officer Bartlett a higher score than Minor. (*Id.* ¶ 49.)

After the interview, Major Connor checked Officer Bartlett's references. He called Officer Bartlett's supervisor at the Butler VA Police, Lieutenant Jeremy Hodges. Lieutenant Hodges described Officer Bartlett's attendance as really good, her dependability, capacity for discretion and judgment as good, and never had a major issue with her accuracy. Lieutenant Hodges reported that Officer Bartlett is extremely well liked and is very good with investigations; he noted as a weakness that she forgets her position sometimes. He finally noted Officer Bartlett utilizes veteran centric policing and her work in general is "outstanding." (*Id.* ¶ 57.)

Major Connor also contacted Chief Bennett for a reference check. Chief Bennett reported that Officer Bartlett has excellent attendance, great dependability and is always on time, exercises good judgment, and has good accuracy. Chief Bennett noted that Officer Bartlett worked well with others and is very detailed. He identified as a weakness the technical aspects of the job but characterized her work in general as "great." Chief Bennett also responded that Officer Bartlett is a good worker who is very well liked and does great veteran centric policing. (*Id.* ¶ 58.)

Deputy Chief Namachar selected Officer Bartlett for the Lead Police Officer job based on the fact that she received the highest interview score and did well in the interview. (DSUF ¶¶ 52-53.) On April 8, 2021, the VA notified Minor that he was not selected for the Lead Police Officer

---

[7] At the time of the April 5, 2021 interviews, Officer Bartlett had been employed by the Butler VA Police Department as a police officer for approximately one year, which is also the duration of the probationary period for new police officers in the department. Prior to being hired by the Butler VA Police Department, she worked in various other jobs. During her service as Master of Arms with the U.S. Navy from 2003-2005, Bartlett achieved the rank of Petty Officer Third Class, or E4. (PSAMF ¶¶ 12-14.)

position. Officer Bartlett's promotion to the Lead Police Officer position became effective on April 25, 2021. (*Id.* ¶¶ 55, 61.)[8] The parties agree that Officer Bartlett was qualified for the Lead Police Officer position. (DSUF ¶¶ 59-60.)

Officers Ronald Bongivengo and Officer Christopher Thomas were also legitimate contenders for the Lead Police Officer job. Both officers, who are Caucasian, had more experience than Officer Bartlett, they also scored below Officer Bartlett at the interview and were not selected. (DSUF ¶ 63.)

Deputy Chief Namachar states that in selecting Officer Bartlett over Minor (and others), he did not discriminate against Minor based on his race or his prior EEO complaints. (*Id.* ¶¶ 64-65.)[9] Chief Bennett states that he did not consider race or prior EEO activity when he answered questions during the telephone reference check for Officer Bartlett. Other officers with the Butler VA, including Sergeant George Stutz and Douglas Orloski, Sr., never observed any acts or communications by Major Connor, Deputy Chief Namachar, or Chief Bennett that suggested they were discriminating against Minor on account of his race or his prior lawsuit. (*Id.* ¶¶ 66-68.)

### G. Relationship between Major Connor and Officer Bartlett

Various conflicting evidence was presented regarding the existence and nature of the relationship between Major Connor and Officer Bartlett. Minor testified that "everyone in the department" was aware that Major Connor and Officer Bartlett had an inappropriate relationship.

---

[8] A subsequent email from Chief Bennett mistakenly stated that Officer Bennett was promoted on March 31, 2021, which was before the interviews took place. (*Id.* ¶ 62.) Minor does not rely on this error as part of his challenge to the VA's proffered reason.

[9] Minor refers to the declarations of Chief Bennett and Deputy Chief Namachar as "self-serving." (PRDCSMF ¶¶ 64-65.) As the Court of Appeals has stated, "the testimony of a litigant will almost always be self-serving since few litigants will knowingly volunteer statements that are prejudicial to their case. However, that has never meant that a litigant's evidence must be categorically rejected by the fact finder." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 321 n.2 (3d Cir. 2014). Notably, Minor does not cite contradictory testimony from their depositions or claim that these are "sham affidavits."

According to Minor, officers are not supposed to fraternize with subordinates. Despite being on a different shift than Connor and Bartlett, Minor observed them physically closer than is normal in a work environment. He heard rumors that they went out for drinks together and left together. However, Minor has never seen Major Connor and Officer Bartlett engage in any physical or intimate act. (PSAMF ¶ 24; DSUF ¶ 95.)

The VA disputes Minor's conclusions on several grounds. First, as it correctly notes, Minor offered no evidence to support the "rumor" other than what he actually witnessed. Moreover, as Minor lacks personal knowledge of what "everyone in the department" knew, this assertion lacks foundation. Finally, Minor's comparison of fraternization in the military to the Butler VA is not accurate: pursuant to VA policy, it is inappropriate for a supervisor to have a relationship with a subordinate over whom the supervisor has direct control or influence, but unlike the military, the policy does not prohibit relationships between persons not in this category. (DRPSAMF ¶ 24.)

Others had heard rumors that Connor and Bartlett were socializing. (PSAMF ¶ 26.) Prior to the selection process for the April 2021 sergeant position, Officer Orloski observed Officer Bartlett and Major Connor leaving at different times at a shift change, but when Orloski left the building, he saw them standing at the corner sidewalk talking. Orloski thought it was inappropriate that Major Connor, who was on the interview panel, would be talking to a subordinate who had applied for the position. Orloski took a picture of them which he then sent to Officer Bongivengo with the message, "Guess who's going to be the next sergeant picked for promotion," as a joke. (*Id.* ¶¶ 27-28.) Nevertheless, he has no personal knowledge of a romantic relationship between the two. (DSUF ¶ 79.)

Deputy Chief Namachar also had heard rumors of a romantic relationship between Connor and Bartlett, but he did not question either of them about their relationship because Chief Bennett

was investigating the matter. (PSAMF ¶ 29; DSUF ¶ 96.)

According to Minor, Sergeant Stutz was around Major Connor and Officer Bartlett more often and would know more about their relationship. (DSUF ¶¶ 73-74.) Sergeant Stutz socialized with Major Connor a few times outside of work. On two occasions before Officer Bartlett was promoted, Sergeant Stutz and Major Connor socialized with Officer Bartlett. Sergeant Stutz did not observe anything that suggested to him that the two were romantically involved. Further, he heard no rumors of a romance between Major Connor and Officer Bartlett around the time of the interviews for the Lead Police Officer position. (*Id.* ¶¶ 76-77.)

According to Minor, prior to the April 2021 interviews, Officer Thomas indicated in a report that a "door or vehicle" was found unsecured and Officer Bartlett was responsible. Major Connor came in while off duty, asked everyone in the office to leave, and then yelled at Officer Thomas in an effort to convince him to remove Bartlett's name from the report. Minor witnessed the initial part of the exchange, and as the union representative, was later approached by Officer Thomas, who complained that Major Connor's request was inappropriate and asked what he should do. Minor recommended that the matter be brought to the attention of Chief Bennett and Deputy Chief Namachar. (PSAMF ¶ 25.)

The VA disputes these facts, noting that Officer Thomas's report indicated that much later, on May 12, 2021, Officer Bartlett unlocked a door, but another person (a logistics staff member) was responsible for leaving it unlocked. Further, the VA notes that Major Connor was detailed out of state from May 7 to 16, 2021. (DRPSAMF ¶ 25.)[10]

---

[10] It is unclear whether the VA is attempting to demonstrate that the incident did not occur at all or that it is irrelevant because it occurred after the decision to promote Bartlett was made. In either event, the Court must accept Minor's version of the events for purposes of the resolving the VA's motion for summary judgment.

H.  Minor's Beliefs about Discrimination Against Him

Minor believes that by not promoting him, Chief Bennett, Deputy Chief Namachar and Major Connor discriminated against him because of his race. He further claims that they did not promote him in retaliation for his previous EEO activity and lawsuit. He theorizes that management officials had already decided that Officer Bartlett would be promoted to Lead Police Officer before the interviews took place and delayed issuing a job announcement until her probationary period ended so she could apply for the job. Further, he contends that he was scored lower on the interview than deserved and Officer Bartlett was scored higher than she deserved so that she would get the promotion. Minor does not know how Officer Bartlett actually performed during the interview but merely assumes she could not have performed well because she was relatively new to the police force. (DSUF ¶¶ 81-83.)

Minor cannot identify any statement made by Chief Bennett, or anyone else, that suggests he was not promoted due to his race. Minor has never known Chief Bennett to use derogatory language relating to race. When asked what actions Chief Bennett has taken that suggest that he acts in a racially discriminatory manner, Minor identified the following: 1) Chief Bennett has not hired any other Black police officers; 2) he has skipped over Minor for promotions; 3) he requires Minor to get permission to do police tasks; and 4) "way before" Minor applied for the Lead Police Officer job, Chief Bennett claimed to be investigating Minor for allegedly cursing at a staff member, but the charges were "bogus." (DSUF ¶¶ 84-85.)

Minor has not had any conversations with Deputy Chief Namachar, nor does he know of any conversations that Namachar had with others, that would suggest he did not select Minor for the job on account of his race. When asked what actions Deputy Chief Namachar has done that he believes were motivated by racial discrimination, Minor responded that he: 1) supports Chief

Bennett's decisions, including not to promote Minor; and 2) has not hired any other black officers. (*Id.* ¶ 88.)

Minor has not had any conversations with Major Connor, nor does he know of conversations between Connor and others, that suggest he did not select Minor for the job because of his race. Major Connor has not taken any actions that suggest to Minor that he is discriminating against him based on race. (*Id.* ¶ 89.)

Minor knows of one other African American police officer, David Cook, who was hired by the Butler VA sometime after 2017. Minor does not know the circumstances of Officer Cook's termination. (*Id.* ¶ 86.)[11]

Minor believes that the VA's decision not to hire him for the Lead Police Officer position was based on retaliation and unlawful discrimination because: a) he had just "won" his previous discrimination lawsuit against the Pittsburgh VA; b) he was told he would get the position but did not get it; c) Major Connor was involved in interviewing; and d) he was the most senior officer who sought the position and is the most knowledgeable of the candidates. (*Id.* ¶ 91.)

No supervisors at the Butler VA said anything to Minor about the resolution of his prior lawsuit. Deputy Chief Namachar only learned through rumor on an unspecified date that the previous lawsuit was resolved. (DSUF ¶ 92; PSAMF ¶ 38.) Major Connor was aware of Minor's prior EEO activity at the time of the April 2021 interviews. (PSAMF ¶ 39.) Minor had no conversations with Deputy Chief Namachar or Major Connor that suggested to him that they did not select Minor in retaliation for his prior lawsuit or EEO filings. Further, he is unaware of any conversations that Chief Bennett, Deputy Chief Namachar, or Major Connor had with others that

---

[11] Neither Minor nor Deputy Chief Namachar knows whether there have been other Black applicants for positions at the Butler VA Police since 2015. (*Id.* ¶ 87.) There is nothing in the record that clarifies this issue.

suggest that he was not selected in retaliation for his lawsuit or EEO filings. (DSUF ¶ 90.)

I.   Minor's Subsequent Promotion

In August 2022, Minor accepted a promotion to a Lead Police Officer position at GS-Level 7, and now holds the rank of Corporal. (DSUF ¶ 69.) Minor argues that, despite the promotion, he is not treated the same as other Lead Police Officers in various respects (PSAMF ¶¶ 30-34), which the VA disputes. (DRPSAMF ¶¶ 30-34.)

III.   **Standard of Review**

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579,

1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

**IV.    Discussion**

Section 17 of Title VII prohibits discrimination in the federal sector on the basis of race, color, religion, sex and national origin. 42 U.S.C. § 2000e-16(a). Section 17 incorporates the provisions of Title VII regarding the private sector. 42 U.S.C. § 2000e-16(d).

Title VII also provides that: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The Court of Appeals has held that "federal employees may bring claims for retaliation under Title VII even though the federal-sector provision does not explicitly reference retaliation." *Komis v. Secretary of United States Dep't of Labor*, 918 F.3d 289, 294 (3d Cir. 2019).

A.  <u>Minor's Racial Discrimination Claim</u>

In Count I of the Complaint, Minor asserts a claim of racial discrimination under Title VII based on the VA's failure to promote him to the Lead Police Officer position in April 2021. The VA contends that he cannot state a prima facie case because the circumstances on which he relies— that he was one of only two African American officers at this location and that Major Connor was in a romantic relationship with Officer Bartlett—do not raise an inference of discrimination. It also

contends that even if Minor could establish a prima facie case, the VA has proffered a legitimate, non-discriminatory reason why he did not get the promotion and there is no evidence of pretext.

In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination indirectly following the shifting burden analysis set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). *See Lawrence v. National Westminster Bank N.J.*, 98 F.3d 61, 68-69 (3d Cir. 1996). As the Court of Appeals for the Third Circuit has stated:

> The existence of a prima facie case of employment discrimination is a question of law that must be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action…

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (footnote and citations omitted). The fourth element may be satisfied by a showing that "another, not in the protected class, was treated more favorably." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

The Court finds that Minor has stated a prima facie case of racial discrimination. He belongs to a protected class, was qualified for the position and was not hired. As noted, the fourth element may be satisfied by showing that another person who is not in the protected class was treated more favorably, in this case, Officer Bartlett. Minor does not need to demonstrate that there was systemic race discrimination at the Butler VA in order to demonstrate the existence of a prima facie case. Moreover, while evidence of Major Connor's alleged relationship with Officer Bartlett may be relevant to some issue, it is not relevant to the existence of a prima facie case.

As explained in *McDonnell Douglas*, once a prima facie case is established, the burden of production then shifts to the VA to articulate a legitimate, non-discriminatory reason for not

promoting Minor. The VA has proffered as its legitimate, non-discriminatory reason the fact that

Minor performed poorly at his interview and Officer Bartlett outperformed all of the candidates,

including Minor. This is, in fact, a legitimate, non-discriminatory reason that Bartlett was selected

instead of Minor. Thus, the VA has satisfied the relatively light burden of production. *Krouse v.*

*American Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997).

The burden then shifts back to Minor to proffer evidence from which the trier of fact could

conclude that the proffered reason for his non-promotion is a pretext for unlawful racial

discrimination. The Court of Appeals has explained that:

> to defeat summary judgment when the defendant answers the plaintiff's prima facie
> case with legitimate, non-discriminatory reasons for its action, the plaintiff must
> point to some evidence, direct or circumstantial, from which a factfinder could
> reasonably either (1) disbelieve the employer's articulated legitimate reasons; or
> (2) believe that an invidious discriminatory reason was more likely than not a
> motivating or determinative cause of the employer's action.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

Minor proceeds along "*Fuentes* prong one" by arguing that he has submitted evidence from

which a factfinder could reasonably disbelieve Defendant's articulated legitimate reason. *Keller v.*

*ORIX Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc).[12] He contends that the

fact that Officer Bartlett, who had far less experience, was selected over him because she scored

better during the interview is so implausible that it may be considered evidence of pretext. In

asserting this argument, Minor relies upon several decisions holding that "subjective evaluations

are more susceptible of abuse and more likely to mask pretext." *Weldon v. Kraft, Inc.*, 896 F.2d

793, 798 (3d Cir. 1990) (quoting *Fowle v. C & C Cola, a Div. of ITT-Cont'l Baking Co.*, 868 F.2d

59, 64 (3d Cir. 1989)).

---

[12] Minor does not argue that he has proffered evidence that "allows the fact finder to infer that discrimination
was more likely than not a motivating or determinative cause of the adverse employment action," *Keller*,
130 F.3d at 1111. Thus, he has not invoked "*Fuentes* prong two."

Minor has taken this quote out of context. Although the Court of Appeals held that subjective qualifications are not appropriate for the prima facie case but are "better left to the later stage of the *McDonnell Douglas* analysis," it did not hold that an employee can demonstrate pretext by simply pointing to his own opinion about his subjective qualifications. Rather, at the pretext stage, the Court of Appeals has repeatedly held that: "In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998) (citation omitted).

Minor contends that the Court can engage in a comparison of the qualifications of the various candidates, citing *Youssef v. Anvil International*, 595 F. Supp. 2d 547, 562 (E.D. Pa. 2009). In that case, however, the court stated that:

> Although it is true that Plaintiff has a degree in engineering, this does not mean that he was the most qualified candidate for specific positions at Anvil. Both Hatfield and Lightner possessed years of experience well-suited for the positions to which they were hired and promoted, Hatfield had taken a number of specialized professional training courses, Lightner had worked in the production department prior to being promoted to department supervisor (unlike Plaintiff), and Lightner (like Plaintiff) received positive evaluations prior to her promotion. Further, Plaintiff did not have any recent supervisory experience. *Plaintiff cannot rely on his own allegations that he was best qualified for the positions as evidence of pretext.*

*Id.* (footnote omitted) (emphasis supplied). Nothing in *Youssef* supports the position that the Court should engage in an independent evaluation of the candidates' qualifications, much less that it should accept Minor's own evaluation of his qualifications or how the factors should be weighed, rather than the judgment of the VA panel who selected Officer Bartlett.

In *Simms v. Oklahoma ex rel. Department of Mental Health & Substance Abuse Services*, 165 F.3d 1321, 1330 (10th Cir. 1999), the court stated that: "When two candidates are equally

19

qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." Minor asserts that unlike that scenario, he and Officer Bartlett were not equally qualified based on objective criteria because he had more experience. But this is not accurate. As determined by HR, both Minor and Bartlett were selected for interviews because both of them met the objective criteria for the position. Thereafter, they were evaluated based on subjective factors, including their interview performance, how they answered various questions, their knowledge of VA and police procedures, and their responses to a hypothetical scenario. Minor may have had more experience than Officer Bartlett, but the weight to be given to this factor is a subjective consideration.[13]

Thus, Minor cannot rely on the argument that the VA "should have" given more weight to his job experience than to Officer Bartlett's interview performance, as the criteria for promotion must be those selected by the employer. As the VA notes, candidates Thomas and Bongivengo, both of whom are white, also had more experience than Officer Bartlett. Like Minor, they were not selected based on lower interview scores. Moreover, it is undisputed that the VA routinely relied on interview performance in making promotion decisions.

Nor can Minor rely on the argument that the panelists did not fairly evaluate his responses because, for example, he knew a particular form by name rather than by number. The Court does not "sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Title VII] does not interfere. Rather, our inquiry is limited to

---

[13] The VA also argues that its interview process "is less susceptible to subjectivity than the typical interview process." (ECF No. 40 at 4.) However, even if the process were completely subjective, the VA could rely on it without this representing evidence of pretext.

whether the employer gave an honest explanation of its behavior." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995). *See also Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999) (the plaintiff must demonstrate "that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."); *Fuentes*, 32 F.3d at 765 ("the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.") The mere fact that the VA did not evaluate some of Minor's interview responses in the way he suggests they should have does not present evidence of pretext. "The fact that an employee disagrees with an employer's evaluation of him does not prove pretext." *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

Next, Minor argues that the VA behaved inconsistently by checking Officer Bartlett's references, but not checking his. He contends that, had the panel done so, any "concerns" about his performance at the interview would have been addressed. As the VA notes, however, there is no evidence that VA officials contacted references for any candidate other than Officer Bartlett, and they did so only after she scored first out of all the candidates. Thus, it is clear that the reference check was done after the panel evaluated the candidates and scored Officer Bartlett the highest, not as a step to allay "concerns" about the interviewees.

Minor points to the fact that he is the only Black officer working at the Butler VA. Although this is true, the VA notes that he proffers no evidence as to whether other Black individuals applied to work at the Butler VA or whether discriminated against despite being qualified. And it argues that this fact does not demonstrate evidence of pretext and Minor cites no authority holding

otherwise.[14] *See, e.g., Folsom v. Superior Ct. of New Jersey, Middlesex Vicinage*, 2008 WL 1782236, at *10 (D.N.J. Apr. 17, 2008) ("Plaintiff's claim, standing alone, that he was the only African-American probation officer, is not enough to create a genuine issue of material fact at the pretext stage.")

Finally, Minor contends that Major Connor preferred Officer Bartlett because he was involved in a romantic relationship with her. As summarized above, whether Major Connor was involved in a romantic relationship with Officer Bartlett is disputed. *Hugh*, 418 F.3d at 266. The VA argues that Minor's suggestion that they were romantically involved is based solely on rumors and inadmissible hearsay. The Court of Appeals has held that "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. University of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). Minor could testify as to what he observed, as could Officers Orloski and Thomas. The trier of fact could infer from this circumstantial evidence that the two were in a relationship.

However, as the VA notes, it is uncontroverted that Major Connor did not tell the other panelists anything about the candidates in advance or how to score the candidates. Even if it could be inferred that Major Connor elevated his own scores based on a relationship with Officer Bartlett, Officer Bartlett still had the highest total scores from the two other panel members and Minor the fifth-highest score even if Major Connor's scores are eliminated. Thus, even if Major Connor's scores were "improper," Minor provides no basis to challenge the scores he received from Major Southard or Captain Garcia.

In any event, even if there was evidence that Major Connor somehow influenced the other

---

[14] In its brief, the VA anticipated that Minor would rely on the example of Officer David Cook, the only other Black officer hired at the Butler VA, who was subsequently fired. However, as Minor does not discuss or rely upon Officer Cook's treatment, this issue need not be considered.

two panelists to prefer Officer Bartlett over the other candidates, it would not constitute evidence of pretext for unlawful racial discrimination. This is because the decision to promote Officer Bartlett over him and other Caucasian applicants was not based on race, but rather (in Minor's view), on her relationship with Major Connor. "While the Third Circuit has not ruled on the viability of a 'paramour preference' claim, all Circuit Courts of Appeals that have ruled on it have held that such claims are not actionable under Title VII." *Whetstine v. Woods Servs.*, 2022 WL 221526, at *5 (E.D. Pa. Jan. 24, 2022). *See Maner v. Dignity Health*, 9 F.4th 1114, 1120 (9th Cir. 2021) (joining the Second, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits in rejecting this claim), *cert. denied*, 142 S. Ct. 899 (2022); *Miller v. Aluminum Co. of America*, 679 F. Supp. 495, 501 (W.D. Pa. 1988) ("preferential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not gender-based discrimination."), *aff'd mem.*, 856 F.2d 184 (3d Cir. 1988).

As the EEOC has stated: "An isolated instance of favoritism toward a 'paramour' (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders." *EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism*.[15]

Although these decisions involved allegations of sex discrimination, there is no principled basis to distinguish a claim of racial discrimination. On the contrary, Minor's theory is that Major Connor preferred Officer Bartlett over him for the promotion because of Connor's relationship with Bartlett, *not* because she is white. Thus, it is fundamentally inconsistent of Minor to complain that he was denied the promotion *because of his race* and then cite the alleged relationship between

---

[15] https://www.eeoc.gov/laws/guidance/policy-guidance-employer-liability-under-title-vii-sexual-favoritism

Connor and Bartlett as evidence of discrimination.[16]

Simply put, Minor has failed to point to such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions such that a fact finder could reasonably disbelieve the employer's articulated legitimate reasons." *Fuentes*, 32 F.3d at 765. Therefore, his claim of racial discrimination cannot be sustained and the VA is entitled to summary judgment in its favor as to Count I.

B. <u>Retaliation Claim</u>

In Count II, Minor alleges that the VA retaliated against him by not promoting him because of his prior lawsuit. The VA asserts that he cannot state a prima facie case of retaliation but even if he could, it has proffered a legitimate, non-discriminatory reason for its action and he has not presented evidence of pretext.

Retaliation claims also follow the *McDonnell Douglas* shifting burden analysis. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). As summarized by the Court of Appeals, the prima facie case elements for a retaliation claim are as follows: 1) the plaintiff engaged in activity protected by the anti-discrimination statute; 2) the employer took action that a reasonable employee would have found to be materially adverse in that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination; and 3) there is a causal connection between the plaintiff's opposition to or participation in proceedings against unlawful discrimination and the employer's action. *Moore v. City of Phila.,* 461 F.3d 331, 341-42 (3d Cir. 2006). The causal connection may be demonstrated based on "unusually suggestive" temporal proximity. *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015)

---

[16] Minor also cannot rely on his own beliefs to rebut the VA's position that its fraternization policy does not correspond to that employed by the military. Ultimately, however, it is irrelevant whether Major Connor and Officer Bartlett violated the VA's fraternization policy. Even if they did, this is not evidence of pretext.

(citation omitted).[17]

The Supreme Court has held that retaliation must be proved by but-for causation. *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). However, for purposes of a prima facie case, a plaintiff need only proffer sufficient evidence to raise the inference that his protected activity was the likely reason for the adverse employment action, not the but-for reason. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249 (3d Cir. 2017). A prima facie case may be shown "by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference" of discrimination. *Iadimarco v. Runyon*, 190 F.3d 151, 162 (3d Cir. 1999) (citation omitted).

The VA argues that the length of time between December 19, 2017, when Minor filed his first lawsuit, and April of 2021, when he was not selected for the promotion at issue in this case, is too long to represent "unusually suggestive" temporal proximity for purposes of a retaliation claim. Minor does not dispute this point. Rather, he contends that the relevant protected activity for purposes of his retaliation claim is the settlement of his previous lawsuit on March 8, 2021, a month before he was denied the promotion. This, he contends, presents "an issue of first impression." (ECF No. 35 at 5.)[18]

This is not so. In *Gladysiewski v. Allegheny Energy*, Civ. A. No. 2:07-1339 (W.D. Pa.), the

---

[17] Additional factors the Third Circuit has considered to evaluate a causal link are an employer's "pattern of antagonism" or retaliatory animus, an employer's inconsistent reasons for the employment action, inconsistencies in the defendant's testimony, the defendant's conduct toward others, and the record as a whole. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Minor cites to none of these factors here.

[18] The parties vigorously dispute whether the Butler VA, Chief Bennett and Deputy Chief Namachar were "aware" of the settlement of Minor's first lawsuit. Ultimately, however, the Court need not resolve this issue because, assuming that they were aware of the settlement, the retaliation claim still fails for the reasons explained herein.

plaintiff filed a claim of retaliation, citing the date the court had entered summary judgment for the defendant in his prior case of discrimination as his protected activity, and contended that it occurred shortly before the defendant initiated the process that resulted in his termination. The plaintiff relied on *Annett v. University of Kansas*, 371 F.3d 1233 (10th Cir. 2004), in which the Court of Appeals for the Tenth Circuit used the date of a jury verdict in a prior lawsuit as the protected activity for measuring temporal proximity, although it provided no explanation of why it did so.

The *Gladysiewski* court rejected plaintiff's argument, stating:

> Plaintiff has cited no authority from the Court of Appeals from the Third Circuit to support his position and the *Annett* case provides no reasoning to support its conclusion. It is unlikely that the Court of Appeals for the Third Circuit would find *Annett* persuasive and conclude that Plaintiff can measure from the date [of the jury verdict] to the date the process resulting in his termination began and point to an unduly suggestive instance of temporal proximity.

*Gladysiewski v. Allegheny Energy*, 2009 WL 4403382, at *11 (W.D. Pa. Dec. 2, 2009). On appeal to the Third Circuit, the Court of Appeals concluded that:

> Although there is certainly some "proximity" between the dismissal of his lawsuit and his termination, we typically measure temporal proximity from the date of filing rather than from the date a lawsuit is resolved, *see, e.g., Jalil v. Avdel Corp.*, 873 F.2d 701, 703 (3d Cir. 1989), since the "protected activity" in which a litigant engages is the filing of a complaint, not its dismissal by a court. In this case, over two years passed between Gladysiewski's filing of his administrative complaint and his termination, a period that is too long to constitute temporal proximity.

*Gladysiewski v. Allegheny Energy*, 398 F. App'x 721, 724 (3d Cir. 2010). The Third Circuit noted that: "Like the District Court, we are not persuaded by the approach taken in *Annett v. University of Kansas*, 371 F.3d 1233 (10th Cir. 2004), where the plaintiff was permitted to rely on the date of a jury verdict in an earlier case, rather than on the date she filed the case." *Id.* n.2.

Minor engaged in protected activity when he filed his prior lawsuit in December 2017, not

when some of his claims were dismissed by order of Court[19] in June 2020, or when the parties stipulated to the dismissal of his remaining claim on March 8, 2021.[20] More than three years elapsed between the date the lawsuit was filed and the date he was notified that he did not receive the promotion at issue in this case. This amount of time is too lengthy to constitute "unusually suggestive temporal proximity." Even if measured from March 2, 2018—the date the Amended Complaint was filed in his prior case that added the denial of a promotion in January 2017—it was still slightly over three years between that activity and the denial of a promotion, a time period too long to suggest temporal proximity. *See Weston v. Pennsylvania*, 251 F.3d 420, 431-32 (3d Cir. 2001) (more than a year too long for establishing a causal link).

Regardless, Minor has failed to proffer any evidence that raises an inference that his protected activity was the likely reason for the decision not to promote him. As it relates to the panel who interviewed each of the candidates, only Major Connor knew that he had filed prior EEO complaints. Neither of the other panel members were aware of his prior lawsuit or his interactions with the EEO. There is no evidence that Major Connor scored Minor lower as a form of retaliation; indeed, if anything, Minor contends that Connor preferred Officer Bartlett based on their relationship. Moreover, even if Deputy Chief Namachar's statement that he did not consider

---

[19] In his factual statement, Minor notes that information about the summary judgment ruling was posted on the department's Facebook page and that "numerous police officers congratulated him concerning the ruling." (PSAMF ¶ 37.) Minor did not "win" his case when the Court partially denied the VA's motion for summary judgment, however. To engage in protected activity, employees "must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore*, 461 F.3d at 341. Minor could not have held an objectively reasonable belief that the Court's partial denial of the VA's motion for summary judgment constituted protected activity on his part. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (rejecting employee's "utterly implausible suggestion that the *EEOC's* issuance of a right-to-sue letter—an action in which the employee takes no part—is a protected activity of the employee.")

[20] The VA also argues that Minor's first case was against "a different office of the agency." This argument is unpersuasive for two reasons. First, both suits appropriately name as the only defendant the "head of the appropriate agency," 42 U.S.C. § 2000e-16(c); *Wadhwa v. Secretary, Dep't of Veterans Affairs*, 505 F. App'x 209, 213 (3d Cir. 2012). Second, the first lawsuit was amended to include allegations about the Butler VA in addition to the Pittsburgh VA.

Minor's prior lawsuit or EEO complaints in his hiring decision could be characterized as self-serving, Minor has not proffered any evidence to the contrary other than his own subjective beliefs.

Minor also argues that he is relying on Title VII's "opposition clause" but he did not "oppose" an unlawful employment practice by opposing the VA's summary judgment motion in the prior lawsuit, nor did he engage in opposition by agreeing to amicably resolve his lawsuit. Under Minor's theory, any plaintiff who asserts a discrimination claim would also have a parallel retaliation claim based on the mere pursuit of lawsuit. There is no basis in the law for this expansive definition. Minor has not stated a prima facie case of retaliation discrimination.

Even assuming that Minor could state a prima facie case of retaliation, the VA has proffered a legitimate, non-discriminatory reason for not promoting him, that is, his poor performance at the interview. Minor cites the same arguments as he did with respect to his racial discrimination claim. As detailed above, however, Minor has pointed to no evidence from which the trier of fact could conclude that this reason is a pretext for unlawful discrimination. Therefore, with respect to Count II, the VA's motion for summary judgment will be granted.

## V.  Conclusion

For these reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate order will follow.


Dated: August 22, 2023                    BY THE COURT:


                                          s/ Patricia L. Dodge
                                          PATRICIA L. DODGE
                                          United States Magistrate Judge